**IN THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| MARLENE M. ONGESII,<br><br>               Plaintiff,<br><br>     vs.<br><br>GURUSAMY INC., dba HEALTH SERVICES OF THE PACIFIC (HSP),<br><br>               Defendant. | CIVIL CASE NO. 15-00017<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**I.    INTRODUCTION**

Plaintiff Marlene M. Ongesii complained to the Equal Employment Opportunity Commission (EEOC) that her employer, Gurusamy Inc., dba Health Services of the Pacific (HSP), had fired her because she was pregnant. The EEOC dismissed her charge and issued her a letter giving her the right to sue in federal court. When she filed suit, alleging violations of Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act of 1978, Ongesii claimed not only pregnancy discrimination, but also more general gender-based harassment, retaliation, and constructive wrongful termination.

Defendant HSP has moved for summary judgment, under Rule 56 of the Federal Rules of Civil Procedure, on all four Title VII claims, asserting that this civil action is time barred, that the only claim over which the Court has jurisdiction is for pregnancy discrimination, and that it wins on that charge as a matter of law. The motion came on for a hearing on February 26, 2016.

1

Having carefully considered the oral arguments of counsel for the parties as well as the briefing papers, declarations and exhibits they submitted,[1] the Court will grant summary judgment to HSP on the first, third and fourth causes of action, and defer consideration of the motion on the second cause of action, for sex discrimination based on pregnancy, until the completion of discovery.

## II. BACKGROUND

Defendant has moved for summary judgment in lieu of moving to dismiss and prior to answering the complaint. Wherever possible, the Court relies on and cites to exhibits and declarations placed in the record by the parties. Where facts pled in the complaint have not been expressly disputed by the Defendant, for purposes of this motion the Court assumes them to be true.

In September 2010, Marlene Ongesii starting working for HSP as a part-time medical social work supervisor. (Compl., pt. V ¶ D.) In February 2012, she received a positive work evaluation. (*Id.,* pt. V ¶ F.) She was given additional work hours and responsibilities, but without additional pay or benefits given to full-time employees. (*Id.,* pt. V ¶¶ G, I.) In October 2012, her immediate supervisor, Sophia Mesa, told her that she would be promoted to full-time status, but HSP refused, stating that Mesa did not have authority to make that decision. (*Id.,* pt. V ¶ J.)

On October 24, 2012, HSP Administrator Albert Gurusamy took formal disciplinary action against Ongesii, giving her a verbal warning for absences and for failing to follow through with events she was tasked to coordinate. (Disciplinary Action Documentation, Def. Ex. E.) The

---

[1] Defendant's Motion for Summary Judgment (ECF No. 6); Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment (ECF No. 6-1); Declaration of Minakshi V. Hemlani and Ex. 1–3 (ECF No. 6-2); Ex. A–I, attached to Ex. 3 (ECF No. 6-3); Opposition to Defendant's Motion for Summary Judgment (ECF No. 9); [Plaintiff's] Concise Statement of Material Facts to Be Litigated and Declaration of Marlene Ongesii (ECF No. 10); Defendant's Concise Statement of Material Facts (ECF No. 11); Reply in Support of Defendant's Motion for Summary Judgment (ECF No. 14); Declaration of Sophia T. Mesa in Support of Defendant's Motion for Summary Judgment and Ex. A–I (ECF No. 14-1). Exhibits A–I in ECF No. 6-3 and ECF No. 14-1 are identical. Plaintiff's Exhibits A–T are attached to her complaint (ECF No. 1, Ex. A–H; ECF No. 1-1, Ex. I–T).

2

plan was to monitor Ongesii's work for the next six months and, "[i]f work deviations are observed," issue a written warning. (*Id.*) Thereafter, "[a]ny further disciplinary actions will be termination from employment." (*Id.*) Followup was scheduled for April 24. (*Id.*)

Ongesii was a part-time employee being asked to perform work comparable to that of a full-time employee. (Compl., pt. V ¶ N.) A male supervisor was hired at forty hours per week and given additional benefits and staff support. (*Id.*, pt. V ¶ O.) In January and April 2013, Ongesii reported two instances of "unruly comment" by male coworkers, including a remark about her pregnancy. (*Id.*, pt. V ¶ S.)

In January 2013, Ongesii informed HSP that she was pregnant and would be having a cesarean section. (*Id.*, pt. VI ¶ F.) She was denied leave under the Family and Medical Leave Act. (*Id.*)

On April 4, 2013, HSP issued Ongesii an Employee Performance Variance setting forth various tasks that Ongesii needed to complete by specific deadlines in April and early May "or disciplinary action will occur." (Def. Ex. F.)

On May 17, 2013, HSP issued a written notice of "Removal/Termination of Employment." (Disciplinary Action Documentation, Def. Ex. G.) HSP alleged that none of the tasks detailed in the April 4 performance variance had been accomplished. At the time, Ongesii was 33 weeks pregnant. (Compl., pt. VI ¶ H.) Her employment was terminated on May 21, 2013, effective immediately. (Letter, Def. Ex. I.)

On January 24, 2014, the EEOC received Ongesii's Charge of Discrimination. (Def. Ex. 2, ECF 6-2.) Under "Discrimination Based On," Ongesii checked "sex." There was no check box for "gender" or "pregnancy," but there was a check box labeled "other." Ongesii's narrative description of the particulars of her claim reads:

> I was hired as a Social Work Supervisor on September 28, 2010. At the time of my termination, I was also carrying out duties as a Hospice Volunteer

3

Coordinator/Hospice Bereavement Coordinator.

In January 20, 2013, I informed Ruth Gurusamy, Co-Owner, of my pregnancy.

On April 4, 2013, I was issued an Employee Performance Variance by Sophia Mesa, Director of Clinical Services.

On May 17, 2013, Albert Gurusamy, Administrator/Co-Owner, presented me with a Disciplinary Action Documentation for alleged performance issues. In this letter, I was offered the opportunity to resign in lieu of termination.

On May 20, 2013, I submitted a rebuttal letter to both Mr. Gurusamy and Ms. Mesa.

On May 21, 2013, Mr. Gurusamy terminated me from my position.

I believe that I have been discriminated against due to my sex (pregnant female), in violation of Title VII of the Civil Rights Act of 1964. I also believe pregnant females as a class have also been subjected to employment discrimination.

On January 30, 2014, the EEOC sent a copy of the charge to HSP for a response. (Def. Ex. 2.) On February 23, 2014, HSP sent the EEOC its response, limited to the pregnancy discrimination allegation. (Def. Ex. 3, ECF 6-3.)

From March through November, Ongesii made many calls and sent many e-mails to the Honolulu EEOC office to follow up on the progress of her claim (Pl. Ex. A), but there is no indication that the substance of the claim was discussed. On November 21, 2014, EEOC investigator Rogelio Colon informed Ongesii by e-mail that the EEOC would be issuing a right-to-sue letter. (Compl., pt. IV ¶ J.)

On December 8, 2014, the EEOC issued a Dismissal and Notice of Rights (right-to-sue letter). (Def. Ex. 1.) Coincidentally, on that same date Ongesii sent Colon a letter notifying him that she had not received the right-to-sue letter and requesting a copy of her case file. (Pl. Ex. G.) Counsel for Defendant HSP received a copy of the right-to-sue letter on December 17. (Hemlani Decl.)

On January 6, 2015, Ongesii followed up with Colon by e-mail, informing him she still had not received the right-to-sue letter. (Pl. Ex. H.) Colon told her that the letter was mailed out in December and that the 90-day clock for filing a lawsuit would not start until she received it.

4

(*Id.*)

On February 19, Ongesii e-mailed Colon that she still had not received the right-to-sue letter. (Pl. Ex. I.) On February 26, Colon sent Ongesii a copy of the right-to-sue letter via e-mail attachment. (Pl. Ex. J.) Ongesii confirmed receipt that same day. (Pl. Ex. J.) On May 26, 2015, Ongesii, proceeding pro se, filed a Title VII complaint (ECF No. 1) in this Court.

**III.    LEGAL STANDARDS**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A shifting burden of proof governs motions for summary judgment under Rule 56. *In re Oracle Corp. Securities Litig.,* 627 F.3d 376, 387 (9th Cir. 2010). The party seeking summary judgment bears the initial burden of proving an absence of a genuine issue of material fact. *Id*. (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Where, as here, the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007).

If the moving party meets its burden, the burden then shifts to the nonmoving party to set forth "specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 250. "The mere existence of a scintilla of evidence . . . will be insufficient" and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 252; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

5

Viewing the evidence in the light most favorable to the nonmoving party, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

"Where the opposing party has not had sufficient time to complete discovery or otherwise marshal facts to oppose the motion, application may be made under Rule 56(f) [now 56(d)] for a continuance of the proceedings pending completion of discovery." *THI-Hawaii, Inc. v. First Commerce Financial Corp.,* 627 F.2d 991, 994 (9th Cir. 1980).

**IV. DISCUSSION**

Defendant HSP moves for summary judgment on three grounds: (1) that all Ongesii's claims are time-barred, because she failed to file this lawsuit within 90 days of receipt of a right-to-sue letter from the EEOC; (2) that she failed to exhaust administrative remedies on her three non-pregnancy-based claims; and (3) that no genuine issues of material fact remain as to the pregnancy-based discrimination claim and HSP is entitled to judgment as a matter of law.

A. <u>Ongesii's Complaint Is Not Time-Barred</u>

A Title VII plaintiff generally has 90 days to file suit after receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Stiefel v. Bechtel Corp.,* 624 F.3d 1240, 1245 (9th Cir. 2010). "[T]he 90-day filing period is a statute of limitations subject to equitable tolling" in circumstances where tolling would effectuate the congressional purpose. *Valenzuela v. Kraft, Inc.,* 801 F.2d 1170, 1174 (9th Cir. 1986); *see Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982) (holding that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"). When a time limit is not jurisdictional, the burden of proving an affirmative statute-of-limitations defense is on the defendant. *Kingman Reef Atoll Investments, L.L.C. v. United States,* 541 F.3d 1189, 1197 (9th

6

Cir. 2008).

Equitable tolling doctrine, even when available, is applied "sparingly[.]" *Scholar v. Pacific Bell,* 963 F.2d 264, 267 (9th Cir. 1992). Factors bearing on equitable tolling include whether tolling would unfairly make the employer defend a stale claim and whether the plaintiff diligently pursued her claim. *Kingman Reef Atoll,* 541 F.3d at 1174–75. When the actual date a right-to-sue letter was received is unknown, a rebuttable presumption arises that plaintiff received the letter within three days of its issuance. *Payan v. Aramark Mgmt. Servs.,* 495 F.3d 1119, 1123 (9th Cir. 2007). The presumption "may be rebutted with evidence to the contrary." *Id.* at 1124.

The date that Ongesii actually received her right-to-sue letter is known: February 26, 2015. She filed her lawsuit on May 26, the eighty-ninth day of the 90-day limitations period. Therefore, this action is not time barred.

The three-day presumption would come into play if Ongesii acknowledged receipt of the letter but did not know or remember the date she received it. *See Payan,* 495 F.2d at 1121; *Taylor v. Books a Million, Inc.,* 296 F.3d 376, 379–80 (5th Cir. 2002) (holding that the application of a presumption of receipt is appropriate "[w]hen the date on which a right-to-sue letter was actually received is either unknown or disputed"); *Stambaugh v. Kansas Dept. of Corrections,* 844 F. Supp. 1431, 1434 (D. Kans. 1994) (finding that "the court has no basis for using the three-day presumption unless the plaintiffs and their attorneys cannot recall the actual date of receipt"); *Armiger v. Butler Cnty. Emergency Med. Servs.,* 2015 WL 4480355, *1, 2015 U.S. Dist. LEXIS 94326, *1–2 (E.D. Mo. 2015) (plaintiff stated she received right-to-sue letter but did not indicate date upon which it was received). Ongesii knows the date, so the three-day rule does not apply.

For Defendant HSP to carry its burden in this statute-of-limitations defense, it would

have to show that the date Ongesii received the re-sent notice via e-mail should not control. For example, if the evidence indicated that the original right-to-sue letter was actually delivered to Ongesii's residence or Post Office box sometime shortly after it was sent, then it would be deemed to have been received by Ongesii, even if it never made it into her hands. In *Scholar v. Pacific Bell,* the Ninth Circuit held that the plaintiff received the right-to-sue letter when her daughter received and signed for it at the plaintiff's residence. 963 F.2d at 267. There is no such evidence in this case. Unlike in *Scholar,* the letter was not sent by certified mail, so there is no record of whether it was ever delivered. The EEOC investigator told Ongesii, "We do not mail dismissal letters via certified mail – they are sent by regular mail." (E-mail from Rogelio Colon to Ongesii, Feb. 26, 2015, Pl. Ex. J.) Ongesii herself expressed surprise at this, given the significance that the law places on the date of receipt. "I was actually anticipating a certified mail letter of this . . . for documentation purposes due to time sensitive date[.]" (E-mail from Ongesii to Colon, Feb. 26, 2015, Pl. Ex. J.)

      HSP has not asserted or presented evidence that Ongesii had changed her address (the right-to-sue letter is addressed to a Post Office box in Barrigada, Guam) without telling the EEOC. The only evidence that the letter was delivered to Ongesii is that HSP's attorney received HSP's copy on December 17. That fact alone, however, is not enough to impute that the letter must have been successfully delivered to Ongesii's Post Office box. The evidence shows that Ongesii was not neglecting her mail but was watching for the letter. "I have been checking the mail and have not received letter case is closed yet." (E-mail from Ongesii to Colon, Jan. 6, 2015, Pl. Ex. H.) Ongesii was diligent in contacting the EEOC investigator to report, on three occasions, that the letter had not arrived. For these reasons, the Court credits February 27, 2015, as the date Ongesii actually received the letter and does not find cause to presume receipt three days after the letter issued on December 8, 2014.

8

However, even if the presumption were to apply, the Court finds equitable tolling to be appropriate in this case. Ongesii showed due diligence by repeatedly notifying the EEOC investigator that the right-to-sue letter had not arrived. HSP points to what it considers a significant lapse in her diligence. On January 6, the investigator asked Ongesii to let him know if she did not receive the letter by the end of the next week, which would have been January 17. (E-mail from Colon to Ongesii, Jan. 6, 2015, Ex. H, ECF No. 1.) Ongesii waited until February 19 to tell the investigator that the letter still had not arrived. (E-mail from Ongesii to Colon, Feb. 19, 2015, Pl. Ex. I.) She apologized to him for the delay and explained that it had been "a crazy month": her stepfather had been hospitalized on January 10 and passed away on January 12. (*Id.*) Certainly, Ongesii could have done better in keeping in touch with the investigator during those weeks. Her diligence was not perfect, but it was good enough. "Due diligence means ordinary, rather than extraordinary, diligence, and it is within the discretion of the trial judge to determine the diligence required under the circumstances." *United States v. Walker,* 546 F. Supp. 805, 811 (D. Haw. 1982) (citations omitted). In determining that Ongesii displayed due diligence, the Court considers the whole of her conduct from the time the investigator notified her in November 2014 that a right-to-sue letter would issue until he e-mailed an electronic copy to her three months later. She showed a consistent, abiding concern over the delay in receiving the right-to-sue letter and expressed that concern at reasonable intervals to the investigator, given the other circumstances in her life at the time. Although HSP understandably is chagrined to have to defend a lawsuit when it thought, after mid-March passed, that none had been brought in time, it has not shown that the two-month delay until late May, when Ongesii filed her complaint, prejudices its ability to defend itself. For these reasons, the Court finds that Ongesii's action against HSP is not time barred.

9

B.  Ongesii's Causes of Action Not Based on Pregnancy Discrimination Fail for Lack of Subject Matter Jurisdiction

In Count 1 of her complaint, Ongesii claims "sex-gender" discrimination, which she distinguishes from "sex/pregnancy" discrimination charged in Count 2. In Count 3, she alleges she was retaliated against for speaking up about "corporate bullying" and other unlawful employment practices. (Compl., pt. VII ¶ C.) In Count 4, she alleges "constructive wrongful termination" due to a "negative hostile work environment." (*Id.*, pt. VIII ¶ D.) Defendant HSP asserts that the Court lacks jurisdiction to hear these claims because Ongesii did not raise them with the EEOC and thereby failed to exhaust administrative remedies.

To establish subject matter jurisdiction in a Title VII claim, a plaintiff must first exhaust administrative remedies by filing a timely charge with the EEOC or the appropriate state agency. *B.K.B. v. Maui Police Dept.,* 276 F.3d 1091, 1099 (9th Cir. 2002); 42 U.S.C. § 2000e-5(b). The purposes of this requirement are to afford the agency an opportunity to investigate the charge, give the charged party notice of the claim, and narrow the issues for prompt adjudication and decision. *B.K.B.,* 276 F.3d at 1099 (internal citations and quotation marks omitted). "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge[.]" *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 863 (7th Cir.1985). In a Title VII case, "the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Chisholm v. U.S. Postal Serv.,* 665 F.2d 482, 491 (4th Cir. 1981).

Generally, a Title VII plaintiff cannot raise claims in the district court that he or she failed to bring to the EEOC's attention. *Green v. L.A. Cnty. Superintendent of Schools,* 883 F.2d 1472, 1475–76 (9th Cir. 1989). For new claims to survive, they must be "like or reasonably related to the allegations contained in the EEOC charge." *Id.* at 1476 (internal citations and

10

quotations marks omitted). A new claim is reasonably related if it is to be expected that "the original EEOC investigation would have encompassed the additional charges." *Id.* Because most people whom Title VII is designed to protect lack legal training, the charges they file with the EEOC are "to be construed liberally." *Id.; B.K.B.,* 276 F.3d at 1100 ("We construe the language of EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading" (internal citation and quotation marks omitted)).

In the charge of discrimination she submitted to the EEOC, Ongesii complains that she was first disciplined and then fired because of her pregnancy. She states that in January 2013 she told one of HSP's co-owners that she was pregnant, in April a director gave her a negative performance evaluation, and in May she was fired. She concluded that she had been discriminated against "due to my sex (pregnant female)," and that she believed "pregnant females as a class have also been subjected to employment discrimination." (Def. Ex. 2.)

Ongesii asserts that the charge put the EEOC on notice to investigate the broader claims of sex discrimination against herself and other female HSP employees that she raises now in district court. She points out that she expressly referred to discrimination "due to my sex" and that she checked the box labeled "sex" to indicate the type of discrimination.

The Court disagrees that Ongesii did enough to alert the EEOC to investigate a hostile work environment for women based on their gender, regardless of whether they were pregnant. In making that determination, the Court focuses on Ongesii's factual statement, which is "the crucial element of a charge of discrimination . . ." *B.K.B.,* 276 F.3d at 1100 (quoting *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 462 (5th Cir. 1970)). Ongesii's statement to the EEOC does not include any facts going to broader-based sex discrimination. In contrast, in her district court complaint she asserts that in or about January 2013, she reported to her supervisor that a male co-worker had twice made untoward comments, one concerning her pregnancy but the

11

other a general slur on her abilities. (Compl., pt. V ¶ S.) She also asserts that she was subjected to "harassing abusive, insulting and offensive languages at the jobsite." (*Id.*, pt. VIII ¶ E.) All of this conduct would have been known to Ongesii at the time she submitted her charge to the EEOC, and yet she failed to mention it.

Then there is the matter of the check boxes. Typically, that issue arises when a defendant asserts that plaintiff's claim is barred for failure to exhaust administrative remedies because she failed to check the box for the kind of discrimination she is alleging. The outcome tends to turn on whether "the factual narrative on the charge form refers to the type of discrimination later raised in the litigation." *Santelii v. Electro-Motive,* 136 F. Supp. 2d 922, 934 (N.D. Ill. 2001) (permitting claim of sex discrimination where only box for "race or color" was checked but narrative stated plaintiff was removed as welder because "I am the only female in the welding position"); *Holmes v. Fresh Direct,* 2015 WL 4885216, *5, 2015 U.S. Dist. LEXIS 102638, *11 (E.D.N.Y. 2015) (claim of sex discrimination failed where plaintiff checked only "race" and "retaliation" boxes and failed to allege facts describing sexual harassment, even though she stated she was "black, a woman, and was retaliated against for speaking up about discrimination in the workplace").

Ongesii, however, checked the right box, the one labeled "sex." By statute, discrimination "on the basis of sex" includes "pregnancy, childbirth, or related medical conditions[.]" 42 U.S.C. § 2000e(k); *see Newport News Shipbuilding and Dry Dock Co. v. E.E.O.C.,* 462 U.S. 669, 684 (1983) ("The Pregnancy Discrimination Act has now made clear that, for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex."). Hence it was not wrong for Ongesii to check "sex" as the basis of discrimination, especially when the form did not include "pregnancy" as a separate category. Nor was she obliged to check "other" and write in "pregnancy."

12

In *Nelson v. Wittern Group, Inc.,* plaintiff complained to the agency that when she returned to work five days after giving birth, she was told that her position had been eliminated. 140 F. Supp. 2d 1001, 1004 (S.D. Iowa 2001). In her district court complaint, she alleged a violation of the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k), as well as a separate count of sex discrimination under 42 U.S.C. § 2000e-2. *Id.* The form she filled out for her administrative charge included a box for "pregnancy," which she checked, but she did not check the box labeled "sex." *Id.* at 1009. The court denied the defendant summary judgment on the sex discrimination count. "[I]t seems reasonable to conclude that an administrative charge based on pregnancy discrimination can support a later-added judicial charge based on sex discrimination." *Id.* However, the court indicated that plaintiff's narrative description of pregnancy discrimination in her administrative charge would not have supported an added claim of sexual harassment, as opposed to sex discrimination. *Id.* Other courts have made that same distinction between a claim of adverse action due to a person's membership in a protected class and a claim of sexual harassment in a hostile work environment. *See Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 503 (7th Cir. 1994) ("The claim of sexual harassment in [plaintiff's] complaint cannot be reasonably inferred from the allegations of sex discrimination in her EEOC charge."); *Nicol v. Imagematrix, Inc.,* 767 F. Supp. 744, 753 (E.D. Va. 1991) (finding that "given plaintiffs' narrative EEOC charge, plaintiffs' claims of sexual harassment and a sexually hostile work environment are beyond the scope of the EEOC charge [termination of employment due to pregnancy] and any reasonable investigation that would follow.").

Ongesii's claim for relief for "sex-gender," as she styles it in Count 1 (Compl., pt. V), is not reasonably related to her claim for relief for "sex/pregnancy" (*id.,* pt. VI). The latter claim, in line with her narrative in the EEOC charge, is that she was fired for getting pregnant. It includes some allegations of derogatory comments about pregnant women in the workplace and of

13

adverse action against other pregnant employees, but those may be viewed as lending plausibility to the core charge of sex discrimination. The "sex-gender" count, however, is a harassment claim based on an allegedly hostile work environment. It is founded on alleged conduct largely pre-dating and unrelated to Ongesii's pregnancy: excessive work assignments, denial of benefits accorded to full-time employees doing similar work, the thwarting of Ongesii's attempt to recruit another women to work at HSP. A few of the allegations relate to her pregnancy: crude remarks by a male co-worker and the alleged preference given to the man who replaced her. However, the harm of which she complains is not the termination owing to pregnancy but a history of undercompensating her and undervaluing her work going back at least a year before she told her employer she was pregnant. Her statement to the EEOC describing her administrative charge gives no hint of an undercurrent of sexual harassment. On the basis of that statement, an EEOC investigator could not reasonably be expected to infer that the investigation should go into anything other than the circumstances of Ongesii's termination from work after she told her bosses that she was pregnant.

The e-mail correspondence between Ongesii and the EEOC investigator, Rogelio Colon, supports this conclusion. After an update from Colon on the progress of the investigation, she called his attention only to the circumstances of her termination and affirmed that her administrative complaint was "pretty detailed when I mailed it in." (E-mail from Ongesii to Colon, Sept. 4, 2014, Pl. Ex. C.) When Colon advised her that the EEOC would be closing her case, his explanation focused solely on the allegations of that she had been disciplined "based on your pregnancy" and that "your pregnancy was behind the company's decision to terminate you." (E-mail from Colon to Ongesii, Nov. 21, 2014, Pl. Ex. E.) In her response, Ongesii did not protest that the investigation should have gone beyond the allegations that she was disciplined and fired because of pregnancy. (E-mail from Ongesii to Colon, Nov. 25, 2014, Pl. Ex. F.)

14

For these reasons, the allegations in Count 1 are not like or reasonably related to the administrative charge Ongesii filed with the EEOC. Therefore, the Court will grant summary judgment to Defendant HSP as to Count 1.

At the summary judgment hearing, Plaintiff's counsel conceded that Ongesii had not claimed retaliation in her EEOC charge and had not exhausted her administrative remedies on that claim. Ongesii did not check the "retaliation" box on the EEOC form and did not describe retaliation in her narrative. Counsel agreed that the alleged retaliation was not for filing an EEOC charge, that it pre-dated the filing of that charge and could have been raised at that time. Indeed, nothing in Ongesii's EEOC complaint would have led the EEOC to investigate retaliation or put HSP on notice that Ongesii was claiming retaliation. *See Loos v. Lowe's HIW, Inc.,* 796 F. Supp. 2d 1013, 1019 (D. Ariz. 2011). Therefore, summary judgment on Count 3 will be granted to HSP.

As to Count 4, the charge of constructive wrongful termination is founded on allegations of a hostile work environment, not pregnancy discrimination. As has already been explained, Ongesii's administrative charge did not put the EEOC on notice that it should investigate a hostile work environment consisting of corporate bullying, offensive remarks, or intimidating "behavior and body language" (Compl., pt. VIII ¶ E). For that reason, Ongesii failed to exhaust administrative remedies for constructive wrongful termination. It also cannot escape notice that Ongesii has not produced any evidence that she was constructively discharged – forced to quit her job because conditions had become intolerable. Ongesii was fired. (Letter from Alberty Gurusamy to Ongesii, May 21, 2013, Pl. Ex. T.)

C. <u>Consideration of the Motion for Summary Judgment on Count 2 Will Be Deferred Until Discovery Is Completed</u>

Ongesii has requested that the Court defer consideration of summary judgment as to Count 2 until she has a chance to conduct full discovery. Rule 56(d) of the Federal Rules of Civil

15

Procedure authorizes the district court to defer consideration of a summary judgment motion to "allow time to obtain affidavits or declarations and to take discovery" if a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Ongesii has submitted a declaration (ECF No. 10) stating that she believes that through discovery she can establish that other female employees were terminated by HSP because of pregnancy and uncover evidence that will show her alleged poor work performance was a pretext for firing her.

Procedurally, this case is at a very early stage. Defendant HSP moved for summary judgment three weeks after the complaint was filed. Plaintiff did not have an opportunity to conduct discovery before having to respond to the summary judgment motion. Generally, "summary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'" *Convertino v. U.S. Dept. of Justice,* 684 F.3d 93, 99 (D.C. Cir. 2012) (quoting *Liberty Lobby,* 477 U.S. at 257). When no discovery has been had at all and the nonmovant has made a timely showing of need for discovery, "the district court's entry of summary judgment . . . will constitute an abuse of discretion." *Vance by and through Hammons v. United States,* 90 F.3d 1145, 1149 (6th Cir. 1996). For these reasons, the Court will grant Ongesii's request and defer decision on the motion for summary judgment on the pregnancy discrimination claim until discovery is completed.

### V. CONCLUSION

Plaintiff Marlene Ongesii's claim of sex discrimination on account of pregnancy (Count 2) is not time barred, as she filed suit in district court within 90 days of actually receiving the EEOC's right-to-sue letter. The Court lacks subject matter jurisdiction over the other three counts (1, 3, and 4) because sexual harassment, hostile work environment, and retaliation claims are not like or reasonably related to the sex/pregnancy discrimination claim she raised in her

16

EEOC charge.

Wherefore the Court ORDERS as follows:

(1) Summary judgment on grounds that the complaint is time barred is DENIED.

(2) Summary judgment is GRANTED to Defendant Health Services of the Pacific on the first, third, and fourth claims for relief.

(3) Consideration of the motion for summary judgment on the second claim for relief, sex/pregnancy discrimination, is DEFERRED, pursuant to Fed. R. Civ. P. 56(d), until after the close of discovery on August 21, 2016. (*See* Scheduling and Planning Order, ECF No. 18.) Defendant is granted leave to file a supplemental memorandum or an amended summary judgment motion by the dispositive motions deadline, August 23, 2016.

(4) Plaintiff is granted leave to amend the complaint so as to incorporate allegations made in the dismissed counts into the sole remaining count, if such allegations are material to the claim of sex/pregnancy discrimination. Plaintiff does not have leave to add new counts or revive dismissed counts. An amended complaint must be filed no later than **March 14, 2016**.

(5) If Plaintiff files an amended complaint, Defendant HSP must respond to it within 14 days of service. If Plaintiff does not file an amended complaint by March 14, 2016, Defendant HSP must respond to the original complaint no later than **March 28, 2016.**

**SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
    Chief Judge
Dated: Mar 01, 2016