# THE DISTRICT COURT OF GUAM

MARLENE M. ONGESII,

    Plaintiff,

vs.

GURUSAMY INC., dba HEALTH SERVICES OF THE PACIFIC (HSP),

    Defendant.

CIVIL CASE NO. 15-00017

**DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant Gurusamy Inc., dba Health Services of the Pacific's ("HSP") Supplemental Memorandum in Support of its Motion for Summary Judgment. *See* ECF No. 30, *see also* Mot. Summ. J., ECF No. 6. After reviewing the parties' submissions, and relevant caselaw and authority, and having heard argument from counsel on the matter, the court hereby **DENIES** HSP's Motion for Summary Judgment, for the reasons stated herein.

## I. BACKGROUND

In September 2010, Marlene Ongesii started working for HSP as a part-time Medical Social Work Supervisor. Compl., pt. V ¶ D, ECF No. 1. In February 2012, after working with HSP for eighteen months, she received a positive work evaluation. *Id.*, pt. V ¶ F. She was given additional work hours and responsibilities, but without additional pay or benefits given to full-time employees. *Id.*, pt. V ¶¶ G, I. In October 2012, Ongesii's immediate supervisor, Sophia

1

Mesa ("Mesa"), told Ongesii that she would be promoted to full-time status. *Id.*, pt. V ¶ J. Ultimately, HSP refused to grant Ongesii full-time status and benefits, stating that Mesa did not have authority to make that decision. *Id.*, pt. V ¶ J.

On October 24, 2012, HSP Administrator Albert Gurusamy took formal disciplinary action against Ongesii, giving her a verbal warning for absences and for failing to follow through with events she was tasked to coordinate. Mot. Summ. J., Def.'s Ex. E. at 2 (Disciplinary Action Documentation), ECF No. 14-1. A Performance Improvement Plan was devised to monitor Ongesii's work for the next six months and, "[i]f work deviations [were] observed," issue a written warning. *Id.* Thereafter, "[a]ny further disciplinary actions [would] be termination from employment." *Id.* A follow-up was scheduled for April 24, 2013. *Id.*

Ongesii was a part-time employee being asked to perform work comparable to that of a full-time employee. Compl., pt. V ¶ N, ECF No. 1. In January and April 2013, Ongesii reported two instances of "unruly comment" by male coworkers, including a remark about her pregnancy. *Id.* pt. V ¶ S.

On or about January 2013, Ongesii informed HSP that she was pregnant, and would be having a cesarean section due to preexisting medical complications. Compl., pt. VI ¶ F, ECF No. 1. HSP denied her leave under the Family and Medical Leave Act. *Id.*

On April 4, 2013, HSP issued Ongesii an Employee Performance Variance setting forth various tasks that Ongesii needed to complete by specific deadlines in April and early May "or disciplinary action [would] occur." Mot. Summ. J., Def.'s Ex. F (Employee Performance Variance, ECF No. 14-1).

On May 17, 2013, HSP issued a written notice of "Removal/Termination of Employment." Mot. Summ. J., Def.'s Ex. G at 1 (Disciplinary Action Documentation), ECF No. 14-1. HSP's Disciplinary Action Documentation alleged Ongesii failed to accomplish the tasks

detailed in the April 4, 2013, Employee Performance Variance. *Id.* Ongesii was 33 weeks pregnant at the time. Compl., pt. VI ¶ H, ECF No. 1. Her employment was terminated on May 21, 2013. Mot. Summ. J., Def.'s Ex. I (Letter, May 21, 2013), ECF No. 14-1.

On January 24, 2014, the U.S. Equal Employment Opportunity Commission ("EEOC") received Ongesii's Charge of Discrimination. Mot. Summ. J., Def.'s Ex. 2, Notice of Charge of Discrimination, Jan. 30, 2014), ECF No. 6-2. Under "Discrimination Based On," Ongesii checked only "sex." *Id.* There was no check box for "gender" or "pregnancy," but there was a check box labeled "other." *Id.* Ongesii's narrative description of the particulars of her claim reads as follows:

> I was hired as a Social Work Supervisor on September 28, 2010. At the time of my termination, I was also carrying out duties as a Hospice Volunteer Coordinator/Hospice Bereavement Coordinator.
>
> In January 20, 2013, I informed Ruth Gurusamy, Co-Owner, of my pregnancy.
>
> On April 4, 2013, I was issued an Employee Performance Variance by Sophia Mesa, Director of Clinical Services.
>
> On May 17, 2013, Albert Gurusamy, Administrator/Co-Owner, presented me with a Disciplinary Action Documentation for alleged performance issues. In this letter, I was offered the opportunity to resign in lieu of termination.
>
> . . .
>
> On May 20, 2013, I submitted a rebuttal letter to both Mr. Gurusamy and Ms. Mesa.
>
> On May 21, 2013, Mr. Gurusamy terminated me from my position.
>
> I believe that I have been discriminated against due to my sex (pregnant female), in violation of Title VII of the Civil Rights Act of 1964. I also believe pregnant females as a class have also been subjected to employment discrimination.

Mot. Summ. J., Def.'s Ex. 2, Notice of Charge of Discrimination, Jan. 30, 2014), ECF No. 6-2. On January 30, 2014, the EEOC sent a copy of the charge to HSP for a response. *Id.* On February 23, 2014, HSP sent the EEOC its response, limited to the pregnancy discrimination allegation. Mot. Summ. J., Def.'s Ex. 3 (Response to Notice of Charge of Discrimination, Feb.

3

23, 2014), ECF No. 6-2.

On December 8, 2014, the EEOC issued a Dismissal and Notice of Rights (right-to-sue letter). Mot. Summ. J., Def.'s Ex. 1, (Dismissal and Notice of Rights, Dec. 8, 2014), ECF No. 6-2).

On February 26, Ongesii received a copy of the right-to-sue letter via e-mail attachment, and Ongesii confirmed receipt. Compl. at Ex. J, ECF No. 1-1.

On May 26, 2015, Ongesii, proceeding pro se, filed her Complaint. Compl. pt. I, ECF No. 1. The first claim for relief related to sex/gender discrimination, the second claim related to sex/pregnancy discrimination, the third claim related to retaliation, and the fourth claim set forth a cause of action for constructive wrongful termination. *Id.* pt. V-VIII.

On June 16, 2015, HSP filed a Motion for Summary Judgment as to all four Title VII claims, asserting that the civil action is time barred, that the only claim over which the court has jurisdiction is for pregnancy discrimination, and that it wins on that charge as a matter of law. Mot. Summ. J. at 5-13, ECF No. 6; *see also* Order at 1, ECF No. 23.

Ongesii opposed the Motion on July 9, 2015. Opp'n, ECF No. 9. HSP filed a Reply on July 22, 2015. Reply, ECF No. 14.

This court heard the matter on February 26, 2016. Mins., ECF No. 22. On March 1, 2016, an order granting summary judgment in favor of HSP on the first, third, and fourth claims for relief was issued. Order at 17, ECF No. 23. Consideration of the second claim for relief, alleging sex/pregnancy discrimination, was deferred until the close of discovery on August 21, 2016. *Id.* Ongesii was granted leave to amend her complaint incorporating allegations material to her sex/pregnancy discrimination claim, but was not permitted to add new counts or revive dismissed counts. *Id.*

On March 15, 2016, Ongesii filed a First Amended Complaint. Am. Compl., ECF No.

4

28. HSP filed an Answer to the First Amended Complaint on March 28, 2016. Answer, ECF No. 25.

On August 23, 2016, HSP filed a Supplemental Memorandum in Support of its Motion for Summary Judgment, resubmitting the arguments set forth in its June 16, 2015, Motion for Summary Judgment. Supp. Mem. In Supp. Mot. Summ. J. at 1, ECF No. 30. Ongesii filed her Supplemental Opposition on September 13, 2016. Supp. Opp'n, ECF No. 33. HSP filed its Supplemental Reply on September 27, 2016. Supp. Reply, ECF No. 34.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A shifting burden of proof governs motions for summary judgment under Rule 56. *In re Oracle Corp. Securities Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The party seeking summary judgment bears the initial burden of proving an absence of a genuine issue of material fact. *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Where, as here, the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

If the moving party meets its burden, the burden then shifts to the nonmoving party to set forth "specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 250. "The mere existence of a scintilla of evidence . . . will be insufficient" and the nonmoving

5

party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 252; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Viewing the evidence in the light most favorable to the nonmoving party, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

"Where the opposing party has not had sufficient time to complete discovery or otherwise marshal facts to oppose the motion, application may be made under Rule 56(f) [now 56(d)] for a continuance of the proceedings pending completion of discovery." *THI-Hawaii, Inc. v. First Commerce Financial Corp.*, 627 F.2d 991, 994 (9th Cir. 1980).

### III. DISCUSSION

HSP maintains that no genuine issues of material fact remain as to Ongesii's pregnancy-based discrimination claim, which entitles it to judgment as a matter of law. Mot. Summ. J. at 10, ECF No. 6. Specifically, HSP asserts that it has presented legitimate, non-discriminatory reasons for terminating Ongesii's employment, including evidence detailing Ongesii's history of progressive disciplinary actions for failure to perform essential job functions predating her pregnancy. *See* Supp. Reply at 1, ECF No. 34. In response, Ongesii contends that she has set forth a prima facie case for employment discrimination, and that HSP's reasons for terminating her were pretextual. Supplemental Opp'n at 1-3, ECF No. 33.

The Ninth Circuit "analyze[s a] plaintiffs' Title VII claims through the burden-shifting framework of *McDonnell Douglas Corp. v. Green.*" *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010) (citing 411 U.S. 792, 802 (1973)). Pregnancy discrimination claims are analyzed under the same burden-shifting framework. *Garcia v. Courtesy Ford, Inc.*, No. C06-855RSL, 2007 WL 1192681, at *2 (W.D. Wash. Apr. 20, 2007) (citations and footnote omitted).

6

"[T]o show disparate treatment under Title VII[, a plaintiff] must first establish a prima facie case of discrimination." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citing *McDonnell Douglas Corp.* 411 U.S. at 802). The "degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Id.* (quoting *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994)).

If a plaintiff sustains her burden of establishing a prima facie case of discrimination, "the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision."[1] *Wallis*, 26 F.3d at 889 (quoting *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985), *amended,* 784 F.2d 1407 (9th Cir. 1986); *see also Villiarimo.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citation omitted) (noting that the burden of production rather than persuasion shifts to the employer). If the employer meets its burden, then a plaintiff must "demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory" to prevail. *Id.*

Pretext is established by "'either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 658–59 (9th Cir. 2002), *as amended* (July 18, 2002) (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000)). Ongesii's "evidence must be both *specific and substantial* to overcome the legitimate reasons put forth by [the employer]." *Id.* (citations omitted).

---

[1] A defendant has not met its burden if it "has failed to introduce evidence which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509–10, 113 S. Ct. 2742, 2748, 125 L. Ed. 2d 407 (1993) (citations omitted) (analyzing the burden-shifting framework in the trial rather than summary judgment context).

7

Accordingly, this court must analyze: (A) whether Ongesii has set forth a prima facie case for discrimination; (B) whether HSP has set forth a legitimate, nondiscriminatory reason for Ongesii's termination; and (C) whether Ongesii's termination was pretextual.

**A. Prima Facie Case for Employment Discrimination.**

Ongesii argues that she has satisfied her burden of establishing a prima facie case for pregnancy discrimination. To make out a prima facie case, Ongesii must demonstrate "that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) similarly situated men were treated more favorably, or her position was filled by a man." *Villiarimo*, 281 F.3d at 1062 (citations omitted); *see also Garcia*, 2007 WL 1192681, at *2 (citations omitted).

Ongesii must first show that at the time of her termination, she was a member of a protected class. *See Villiarimo*, 281 F.3d at 1062 (citations omitted). Discrimination on the basis of "pregnancy, childbirth, or related medical conditions" is prohibited by 42 U.S.C. 2000e(k); *see also Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 684, 103 S. Ct. 2622, 2631, 77 L. Ed. 2d 89 (1983) ("The Pregnancy Discrimination Act has now made clear that, for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex."). Here, Ongesii has shown that she was pregnant at the time of her termination from HSP, and that HSP was aware of her pregnancy at the time of termination. Ongesii Decl. ¶ 3, ECF No. 33-1; *see also* Mesa Decl ¶ 13, ECF No. 14-1.[2] Thus, the first element is satisfied.

Second, Ongesii must demonstrate that she was qualified for the position at issue.

---

[2] Although Mesa's Declaration asserts that HSP was not officially advised of her pregnancy until Ongesii's May 20, 2013 letter, Mesa acknowledges that Ongesii mentioned her pregnancy to her earlier, "sometime around April or May of 2013." *See* Mesa Decl. ¶ 13, ECF No. 14-1. This was prior to Ongesii's termination on May 21, 2013, and appears to be prior to the May 17, 2013 meeting offering Ongesii the option to resign in lieu of termination. *See id.* ¶ 9. Ongesii claims she notified her superiors at HSP in January of 2013, and that she showed them her ultrasound at that time. *See* Ongesii Decl. ¶ 3, ECF No. 33-1.

*Villiarimo*, 281 F.3d at 1062 (citations omitted). Ongesii asserts that this element is established through paragraphs 3-5 of Mesa's Declaration, which describes the circumstances of her initial hire as a Medical Social Worker with HSP. Supp. Opp'n at 2, ECF No. 3, *see also* Mesa Decl. ¶¶ 3-5, ECF No. 14-1. Hence, the second element is met.

Third, Ongesii must establish that she was subjected to an adverse employment action. *Villiarimo*, 281 F.3d at 1062 (citations omitted). Because Ongesii has shown she was terminated from her employment, the third requirement is satisfied. *See* Mesa Decl. ¶ 11, ECF No. 14-1. Finally, Ongesii is required to prove that her position was filled by a man. *See Villiarimo*, 281 F.3d at 1062 (citations omitted). Ongesii's position was filled by a male named Jared Ivy. Ongesii Decl. ¶ 2, ECF No. 33-1. Accordingly, Ongesii has established the fourth requirement, and all other requirements, for a prima facie employment discrimination case under Title VII.

### B. HSP Articulation of Legitimate, Nondiscriminatory Reason for Ongesii's Termination.

Ongesii has sustained her burden of establishing a prima facie case of discrimination. Consequently, the burden now shifts to HSP to "articulate a legitimate nondiscriminatory reason for its employment decision. *Wallis*, 26 F.3d at 889 (citation omitted).

HSP contends that it has presented legitimate, non-discriminatory reasons for terminating Ongesii's employment, including evidence that detailed Ongesii's history of disciplinary actions for failure to perform essential job functions predating and unrelated to her pregnancy. *See* Supplemental Reply at 1, ECF No. 34 (citing Mesa Decl. ¶¶ 8, 9, 14, ECF No. 14-1). HSP presented evidence showing that Ongesii's supervisor met with her on or about April 5, 2012 and July 18, 2012, to address her deficient job performance in four areas, including (1) volunteer recruitment, training, and maintenance, (2) bereavement scheduling and support groups, (3) staff development, and (4) bereavement quality assurance. Mesa Decl. ¶ 6, ECF No. 14-1; *see also* Mot. Summ. J., Def's Ex. D (Follow-up Performance Evaluation, July 8, 2012), ECF No. 14-1

9

(setting weekly and short-term goals for performance improvement).

HSP also presented evidence showing formal disciplinary action against Ongesii on October 24, 2012. *See* Mot. Summ. J., Def's Ex. E (Disciplinary Action Documentation), ECF No. 14-1, *see also* Mesa Decl. ¶ 7, ECF No. 14-1. Ongesii was given a verbal warning for absences and for failing to follow through with events she was tasked to coordinate and schedule. *See* Def's Ex. E at 2 (Disciplinary Action Documentation), ECF No. 14-1; *see also* Mesa Decl. ¶ 7, ECF No. 14-1. A plan to improve Ongesii's performance was implemented to monitor Ongesii's work for the next six months. *Id.* The plan noted that a written warning would follow any work deviations, and that termination would follow subsequent written warnings. *Id.*

The Disciplinary Action Documentation scheduled a follow-up for April 24, 2013, but an Employee Performance Variance was issued on April 4, 2014. *See id.*, *see also* Mot. Summ. J., Def's Ex. F (Employee Performance Variance), ECF No. 14-1; Mesa Decl. ¶ 8, ECF No. 14-1. The Employee Performance Variance included Performance Improvement Plan that listed specific duties for Ongesii to focus on, and also warned that disciplinary action would occur if the tasks were not completed. *See* Def's Ex. F (Employee Performance Variance), ECF No. 14-1; *see also* Mesa Decl. ¶ 8, ECF No. 14-1. On May 17, 2013, however, Mesa informed Ongesii that she had not made improvements in her job performance, and Ongesii was given the option to resign in lieu of termination. Mesa Decl. ¶ 9, ECF No. 14-1.

As HSP has met its burden of presenting legitimate, non-discriminatory reasons for termination, Ongesii must now establish that her termination was pretextual. *See Wallis*, 26 F.3d at 889.

**C. Pretext.**

Ongesii submits a Declaration professing to rebut the reasons set forth for her termination within Mesa's Declaration. Supplemental Opp'n at 2, ECF No. 33; *see also* Ongesii Decl., ECF

No. 33-1. HSP counters that Ongesii has failed to provide any evidence showing "that HSP's legitimate, non-discriminatory reasons for terminating her were pretextual." Supplemental Reply at 3, ECF No. 34.

"[T]he defendant's articulation of a legitimate nondiscriminatory reason serves only to shift the burden back to the plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual." *Lowe*, 775 F.2d at 1008 (citation omitted). Ongesii can establish that HSP's articulated reasons were "pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated [HSP] or indirectly by showing that the [HSP's] proffered explanation is unworthy of credence.'" *Chuang*, 225 F.3d at 1124 (quoting *Tex. Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

When direct evidence is unavailable to a plaintiff, "the plaintiff may come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998), *as amended* (Aug. 11, 1998).[3]

When direct evidence is available, a "plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of material fact." *Id.* (citations and internal quotations omitted). Circumstantial and indirect evidence of pretext, on the other hand, "must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of sex." *Id.* (quoting *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996)[4] (district court's grant of summary judgment affirmed where

---

[3] In *Godwin*, the Ninth Circuit reversed the trial court's grant of summary judgment where indirect and direct evidence of discriminatory evidence presented genuine issues of fact as to whether employer's nondiscriminatory explanations were masked by discriminatory motives where plaintiff's presented evidence that her replacement received poor evaluations, that she got along well with most other employees, and where the proffered reasons for the replacements selection were post-hoc and inconsistent with company documentation. 150 F.3d at 1222.

[4] In *Bradley*, the Ninth Circuit held that plaintiff produced insufficient evidence to overcome summary

11

plaintiff "produced no meaningful evidence indicating either that [the employer's] proffered explanation was false"); *see also Collings v. Longview Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995)[5] (summary judgment proper where employees merely maintained they did not commit the misconduct for which they were fired for, and failed to come forward with specific allegations of pretext); *Wallis*, 26 F.3d at 890, 892, *as amended on denial of reh'g* (July 14, 1994)[6] ("[W]here the *prima facie* case consists of no more than the minimum necessary to create a presumption of discrimination under *McDonnell Douglas*, plaintiff has failed to raise a triable issue of fact."); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996) (summary judgment proper because circumstantial evidence of employer's shifting explanations for layoff was not "sufficiently probative").

Here, Mesa's Declaration sets forth areas of deficiency in Ongesii's job performance. Mesa Decl. ¶ 6, ECF No. 14-1. On or about April 5, 2012, and July 18, 2012, Mesa verbally addressed four areas of inadequate performance, including (1) volunteer recruitment, training, and maintenance, (2) bereavement scheduling and support groups, (3) staff development, and (4) bereavement quality assurance. Mesa Decl. ¶ 6, ECF No. 14-1. Ongesii was also issued a verbal warning on October 24, 2012 for failure to attend events she was asked to coordinate without

---

judgment where the only evidence of pretext was plaintiff's "claim[] she had been performing her job adequately and had received no feedback indicating otherwise" because "an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact." 104 F.3d at 270 (citing *Schuler v. Chronicle Broadcasting Co., Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986)). The plaintiff also did not dispute asking a subordinate to serve as a reference for her husband and lie for his benefit. *Id.* at 269-70.

[5] In *Collings*, the Ninth Circuit held that employees produced insufficient evidence to overcome summary judgment where the only evidence of pretext was an explanation that they did not commit the alleged misconduct forming the basis for their termination, and where there was no showing that the employer had any knowledge of the alleged disability at issue. 63 F.3d at 834.

[6] In *Wallis*, the Ninth Circuit held that plaintiff produced insufficient evidence to overcome summary judgment where the only evidence of pretext was plaintiff's representation that "the functions he performed continue to be performed by other . . . employees and that supervisory duties remained at the corporate level," and where no evidence was provided proving direct, circumstantial or statistical age discrimination. 26 F.3d at 892 (footnote omitted).

notice, and failure to delegate follow-up activities. *Id.* ¶ 7. Finally, Ongesii was issued an Employee Performance Variance for failure to calendar HSP events, and for failure to provide monthly bereavement tracking data to HSP's quality assurance department. *Id.* ¶ 8. Ongesii disputes the validity of the disciplinary actions referenced in Mesa's Declaration. *See* Ongesii Decl. ¶¶ 3-12, ECF No. 33-1.

1. **Volunteer Recruitment Training and Maintenance**.

Mesa represents that one of Ongesii's areas of deficiency addressed during the July 18, 2012 meeting was "[Ongesii's] continued failure to recruit volunteers since her April 5, 2012 evaluation." Mesa Decl. ¶ 6(a), ECF No. 14-1. In response, Ongesii states that she recruited volunteers and supervised social work interns, including a volunteer named Nicole Cruz and various University of Guam students. *See* Ongesii Decl. ¶ 4, ECF No. 33-1. Furthermore, Ongesii claims that she coordinated an event to attract volunteers on October 15, 2012. *Id.*

**2. Bereavement Scheduling and Support Groups and Staff Development.**

Mesa states that at the July 18, 2012, meeting, Ongesii was reminded that she was required to attend a weekly Interdisciplinary Group meetings, and guide social worker Amanda San Gill ("San Gill") in her role to schedule hospice patients for Medical Social Services ("MSS"), Volunteer Assistance, counseling, bereavement, and Spiritual Counseling. Mesa Decl. ¶ 6(b), ECF No. 14-1. Ongesii was cited for failure to attend these weekly meetings, and for failure to sufficiently supervise San Gill since her April 5, 2012, evaluation. *Id.*

Mesa also represents that "Ongesii was required to oversee all social work staff and ensure compliance with Joint Commission and Medicare requirements." Mesa Decl. ¶ 6(c), ECF No. 14-1. Ongesii was reminded by Mesa at the July 18, 2012, meeting that she was required to "define and monitor the activities of her staff," and that she was required to attend intake meetings, supervise and coordinate new MSS cases with her staff as required by her April 5,

13

2012, evaluation. *Id.*

In response, Ongesii claims that she "always attended the weekly intake meetings" with the exception of one time that she was on leave. Ongesii Decl. ¶ 5, ECF No. 33-1. Furthermore, Ongesii states that she supervised San Gill, submitted an evaluation for San Gill on January 11, 2013, supervised the National Family Caregiver Support persons, and prepared Hospice and Bereavement calendars. *Id.*

**4. Bereavement Quality Assurance.**

Mesa asserts that she discussed Ongesii's failure to provide necessary data regarding HSP's monitoring of patients' families after death to HSP's quality assurance department. Mesa Decl. ¶ 6(d), ECF No. 14-1. This failure placed HSP at risk for receiving citations by The Center for Medicare and Medicaid Services. Mesa Decl. ¶ 6(d), ECF No. 14-1. In response, Ongesii states that she provided this data, but that "the system at HSP allowed the data that was submitted to be[come] corrupted." Ongesii Decl. ¶ 6, ECF No. 33-1. Once Ongesii realized the data was getting corrupted, she notified her supervisors and co-employees, but was "never given a one day deadline to provide the data." *Id.* Eventually, this data was provided. *Id.*

**5. Failure to Attend Events.**

Mesa represents that on October 24, 2012, Ongesii was issued a verbal warning for failure to attend and sufficiently coordinate various events. Mesa Decl. ¶ 7, ECF No. 14-1. Ongesii was further informed that her work would be monitored over the course of the next six months, further deviations could progress to written warnings or termination, and that a follow-up date to measure improvement goals would occur in April of 2013. *Id.*

Mesa claims that Ongesii failed to attend an annual in-service event for clinical staff that she was asked to coordinate, and also that she failed to provide any notice of her decision not to attend. Mesa Decl. ¶ 7(a), ECF No. 14-1. In response, Ongesii maintains that she was ill during

14

this event, and gave notice via text message to Ruth Gurusamy that she was unable to attend. Ongesii Decl. ¶ 7, ECF No. 33-1.

Mesa also represents that Ongesii coordinated a volunteer training event, but that she failed to attend, and likewise failed to inform anyone that she would be absent and that other employees would need to conduct the necessary training. Mesa Decl. ¶ 7(b), ECF No. 14-1. Ongesii disputes the characterization of the event as a "training event," and instead states that it was an "orientation event." Ongesii Decl. ¶ 8, ECF No. 33-1. Volunteers must first be processed by Human Resources prior to training, and that Human Resources oriented and cleared the volunteers. *Id.* Ongesii also claims that contrary to Mesa's representation, she notified Mesa by text message that she was unable to attend. *Id.*

Additionally, Mesa maintains that although Ongesii "initiated coordination and some planning of an annual bereavement in-service," that she "went off-island and failed to delegate follow-up activities." Mesa Decl. ¶ 7(c), ECF No. 14-1. This required other HSP employees to make last minute arrangements to ensure the event could go forward. *Id.* Ongesii counters that she coordinated the event, and secured the venue, food, bereaved clients, and the volunteers. Ongesii Decl. ¶ 9, ECF No. 33-1. Prior to her trip, all of the planning was complete, and the only task left to be completed was calling the guests and families to make sure they arrived. *Id.* Ongesii delegated the task of making the calls to others, and the calls were made. *Id.* She returned to Guam one day prior to the event, attended the event, and it was a success. *Id.*

**6. Failure to Calendar Activities for Ongoing Education and Seminars in 2013.**

On April 4, 2013, Ongesii was issued an Employee Performance Variance, in part for failure to calendar activities for ongoing education and seminars. Mesa Decl. ¶ 8, ECF No. 14-1. In response, Ongesii states that she was under the impression that the Education Department coordinated these seminars. Ongesii Decl. ¶ 10, ECF No. 33-1. When asked to obtain a speaker

15

for a death and dying seminar, Ongesii obtained the speaker and was never informed of any other education related responsibilities. *Id.*

### 7. Failure to Schedule Monthly Bereavement Support Group Meetings.

Another issue addressed within the April 4, 2013, Employee Performance Variance was Ongesii's "failure to schedule monthly bereavement support group meetings since September of 2012." Mesa Decl. ¶ 8, ECF No. 14-1. Ongesii counters that she scheduled these meetings between the dates of May 9, through June 14, of 2012, but was unable to continue doing so after those dates because the staff necessary for the support groups left Guam and/or HSP. Ongesii Decl. ¶ 11, ECF No. 33-1. The necessary personnel were not replaced until March or April of 2013, at which time the meetings resumed. *Id.* Ongesii projected future meetings, and advertised the resumed meetings in Guam publications. *Id.*

### 8. Failure to Provide Monthly Bereavement Tracking.

Finally, Mesa claims that as of April 4, 2013, Ongesii failed to provide monthly bereavement tracking data to HSP's quality assurance department. Mesa Decl. ¶ 8, ECF No. 14-1. In response, Ongesii again represents that she provided the data, but that it became corrupted when input into HSP's system. Ongesii Decl. ¶ 12, ECF No. 33-1.

### 9. Analysis.

In some ways, this case is similar to *Bradley* where the Ninth Circuit determined that summary judgment was appropriate because "an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact." 104 F.3d at 270 (citation). Ongesii's representation that she adequately coordinated volunteers, subordinates, and events could be considered mere subjective assessments of her own performance. It is similarly analogous to *Collings*, where summary judgment was appropriate where the only evidence of pretext was the employees' explanation that they did not commit the alleged misconduct. 63

16

F.3d at 834.

This case diverges from *Bradley*, however, in that Ongesii has not admitted to wrongdoing. 104 F.3d at 270. This case also departs from *Collings* in that HSP was aware, or should have been aware, of Ongesii's pregnancy,[7] whereas in *Collings*, 63 F.3d at 834, the employer was unaware of the employees' disability. 63 F.3d at 834. Ongesii has shown that she was pregnant at the time of her termination from HSP, and that HSP was aware of her pregnancy at the time of termination. Ongesii Decl. ¶ 3, ECF No. 33-1; *see also* Mesa Decl. ¶ 13, ECF No. 14-1.

At the time of her termination, Ongesii was 33 weeks pregnant. *See* Compl., pt. VI ¶ H, ECF No. 1. This case is comparable to *Cleese v. Hewlett-Packard Co.*, where the court held that evidence of pretext sufficient to survive summary judgment was created by "the suspicious timing" of plaintiff's termination. 911 F. Supp. 1312, 1320 (D. Or. 1995) (finding that the suspicious timing of termination alone was "enough evidence to give rise to the inference that [the employer] may have treated [plaintiff] differently than its non-pregnant employees"). There, plaintiff "informed her supervisor in mid-April 1993 that she was pregnant; was placed on unpaid leave on April 30, 1993; and was terminated on May 15, 1993." *Id.* The court determined that "[t]he fact that she was terminated approximately one month after her pregnancy became known to [her employer was] sufficient to raise a question concerning [her employer's] motives in terminating her." *Id.* This is because questions related to an employer's intent to discriminate are purely questions of fact," which is a question for the jury. *Id.* (quoting *Lowe*, 775 F.2d at 1008).

Like *Cleese*, the timing of Ongesii's termination is suspicious. Furthermore, to survive

---

[7] Ongesii Decl. ¶ 3, ECF No. 33-1 (Ongesii claims she notified her superiors at HSP in January of 2013 and showed them both her ultrasound at that time); *see also* Mesa Decl. ¶ 13, ECF No. 14-1 (Mesa acknowledges that Ongesii mentioned her pregnancy to her "sometime around April or May of 2013").

17

summary judgment, the evidence must be viewed in a light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. Even though HSP presented evidence of deficiencies in Ongesii's work performance, the court cannot say that a rational trier of fact would be unable to find in favor of Ongesii in light of the evidence on the record. *See id.* Hence, Ongesii has presented evidence raising a triable issue of material fact regarding whether HSP's proffered reasons for termination were pretextual in a manner sufficient to overcome summary judgment.

## VI. CONCLUSION

Ongesii sufficiently sets forth a prima facie case for sex discrimination on account of pregnancy. Although HSP has met its burden of presenting legitimate, non-discriminatory reasons for termination, Ongesii has presented a triable issue of fact regarding whether these reasons were pretextual. Specifically, the timing of her termination is suspicious. Therefore, HSP's Supplemental Motion for Summary Judgment is hereby **DENIED**.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Dec 28, 2016**